Thank you, Your Honor. And may it please the court. My name is Thuan Chung and I represent the appellant, Chapter 7, Trustee Nancy Zamora. My main point for arguing today will center around what constitutes recovery by the trustee for purposes of Part 22G. And while recovery is not a defined term, courts that examine this issue have all defined recovery to be very broad. For instance, recovery under Part 22G is not limited to the trustee obtaining final judgment whereby the transfer is avoided and it is not limited to the trustee commencing legal actions to avoid a transfer. Nor is it limited to the trustee threatening to take legal actions to avoid a transfer. But let me stop you there. I hear what you're saying and the cases in outside the Ninth Circuit. I think they've been a little more flexible in favor of trustees, correct? Yes, Your Honor. I mean, the focus is still on what the trustee did that caused something to happen. And here we have a situation where the debtor did an awful lot to fix the problem. I mean, help us out with sort of balancing those things, if you would. I'll be happy to, Your Honor. And to answer Your Honor's question, recovery under Part 22G occur when the trustee has taken some action resulting in the reconveyance of the property and courts throughout the nation in deciding whether there has been a recovery of property by the trustee. The court focused not so much on the extent of the action taken by the trustee, but rather on what those actions accomplished. And Your Honor, I'm mindful that this panel has examined the briefing in great detail and is intimately familiar with the facts of this case. But I would like to point to the Rikers, specifically the factual finding by the Bankruptcy Court to show that but for the trustee action, there would not have been a reconveyance of the deal of trust. And Your Honor, as found by the Bankruptcy Court, the debtor was getting collections phone call and wanted to file Chapter 7. But there was too much equity in the home. And because of that, had he filed Chapter 7 with that much equity, the Chapter 7 trustee would move to administer the house and liquidate the house. So to solve that problem, the debtor... Well, unless he had a large exemption, right? Yes, Your Honor, unless he has a very large, tremendous amount of exemption in the property. He ultimately claimed $175,000, right? That's correct, Your Honor. Would he have claimed less a year before? I don't believe so, Your Honor. Okay, thanks. And to solve that problem, Your Honor, the problem of having too much equity in the home, the debtor created a deal of trust of $200,000 in favor of his sister prior to filing bankruptcy. Can I jump you ahead just to save a little time? I think we're all aware of what the so-called legal experts did and how ill-named that group is. But the first thing the trustee did really was ask questions at the 341, right? That's what the trustee did. Yes, Your Honor. At the 341A on June 19, the trustee discovered the transfer prior to the 341A meeting. And at that meeting, the trustee put the debtor on notice of the discovery. Did the trustee really do that? I mean, the trustee asked questions about the property, didn't really specifically, at least in my reading, ask questions that would suggest the trustee thought there was something fishy about that deed of trust, and then said, I'm going to have a realtor come look at your house. Do I have that wrong? I don't know if that encompasses all the questions inquired by the trustee at the 341A. The trustee definitely put the notice, the debtor on notice of her discovery of the transfer, examined the debtor about the transfer. Well, let me, let me, let me, it's not as if, this is not Marama in the sense that the transfer was concealed, right? Your Honor, I mean, she thought, she saw it in the sense that it was on the schedule. It was on the schedule. It wasn't on the Statement of Financial Affairs. I want to go ahead and then I have something that's, that's bothering me. So go ahead and continue your response to that question. And Your Honor, we have more than just the trustee asking and inquiring about the transfer at the 341A. As the record shows, on that very same day, the trustee filed for notice of asset and putting the debtor and his attorney on notice that the will be administering asset in this case, Your Honor. And the trustee filed a notice of asset on June 19, the same day as the original 341A. But does that necessarily mean there was a problem with the deed of trust? In other words, the trustee might have wanted to administer the asset if there was equity in the property above all the existing deeds of trust plus the exemption. Um, it may not have been, Your Honor. I will acknowledge that point. Um, but a week after, um, the 341A, the trustee filed for absent employee, the realtor, giving notice to the debtor and his attorney that we are selling your home. Yeah, I think there's no, no question in my mind. The trustee certainly conveyed to the debtor that he was going to lose his home. No question about that. The question really, I think, is whether the trustee conveyed that she had a concern about the legitimacy of that deed of trust in favor of the sister and that I'm less sure about. I believe so, Your Honor. Um, as the transcript of the 341A transcript show the 90% of the questioning was resolved, was revolved around the deed of trust, how it was created, when it was created, that kind of thing. In the reply, I think it is, there's a, you know, we're dealing with a statute and we're trying to figure out what is meant by this term recovery. And we pointed out that some of the out-of-circuit cases seem to take a, a, maybe a more expansive view of that term. And your briefing, it says it isn't meant in a dictionary sense, which is sort of code for it's not plain language, as, as I understand that. And as I read out-of-circuit cases, there's certainly some more recent ones that seem to put more of an emphasis on the plain language of the statute. So looking at this from a plain language point of view, isn't, isn't that a problem for you? Because you clearly didn't, I, I, I'm hard pressed to come up with any sense in a dictionary plain language sense where this was recovered. Why shouldn't we apply a plain language standard here? Your Honor, if your Honor were to apply a plain language standard, that would be too narrow. And I believe the Ninth Circuit in the last case has rejected that standard. Because if you apply the plain language standard, the trustee actually have to recover the property, meaning that she has to win back the property in some fashion. So she doesn't have to win the litigation. Is that's, that seems like that's a fair, I'm, I'm trying to figure out how far down the road we can tease away from recovery in the sense of getting a judgment in your hands. Recovery through a settlement, I don't have any problem with that. You know, it's, but here we're sort of at the, if we have a continuum of what recovery means, wouldn't you agree we're down at the, the tiny tip of the branch where if you lean on it, you may fall to the ground kind of place? I don't have a good response to that analogy, Your Honor. But you're right. You'd agree it's at the inception, correct? Yes, Your Honor, I would. And to illustrate the points pointed out by Your Honor, yeah, the trustee does not need to have a judgment in hand saying the transfer is avoided. In fact, under class, the trustee does not even have to commence adversary proceeding at all to avoid a transfer. The issue that we have with the bankruptcy court is that the bankruptcy court held because there was no threat by the trustee to take legal action against anyone. Therefore, there was no, there was no recovery under 522G. And we respectfully, and we have the utmost respect for this bankruptcy court, but we respectfully disagree because the case law that we cited throughout the United States all stand for the proposition that is what the trustee did that resulted in the reconveying of the property. I'm asking whether, whether, I'm sorry, is that, is that an issue of fact or an issue of law? In other words, whether in the particular context of a case, the trustee recovered the property, is that a factual question or a legal question? I believe it can be a combination of both, Your Honor. Luckily, we have very thorough factual finding by the bankruptcy court. Um, I believe that my time almost expire and so I will stop now and think, uh, unless the panel has any additional questions. We'll let you reserve. Thank you, Your Honor. All right. Thank you. Uh, Mr. Perry. I need to unmute your microphone. I think you're muted. Excuse me. Okay. Steven Perry for the appellee. Yes, thank you. I'd like to go back to the start of the hearing, the thing with the examination again. Um, and, um, we view that as, uh, the trustee essentially performing her ministerial duties to uncover the facts of the case she had before her Schedule D, clearly showing a transfer that was, uh, certainly subject to questioning, which she engaged in at the hearing. We only have one half of the hearing. We don't even have the debtor's responses, I'd like to remind the court. So even that the hearing itself is not entirely clear. Um, but how do you, how do you come out of that not thinking that something that happened there, for lack of a better word, motivated the debtor to look at this a little differently and hire you, thank goodness, and have you straighten out a few things and have the debtor end up fixing that transfer and claiming an exemption. So clearly, I mean, something that trustee did started something in motion at the very least. Wouldn't that be fair? Certainly. Absolutely. Okay. Um, however, uh, the questions that the trustee asked are, are not, uh, weren't calculated to provoke the debtor into what the debtor ultimately, uh, did, which was to get his... Well, then he just had an independent burst of altruism or what? No, no, no. He, he, he was, he was made uncomfortable by the hearing. Okay. No, I mean, I, it's clear what we're asking here. The word, as Judge Chavis said, the word is recover. And if we held to that, that's an awful lot more than what happened here, arguably. But the cases seem to say, well, you should be more flexible. And the question is, well, what's the frame through which to be flexible? The trustee did something... What's the test? Exactly. Thank you. What's the test? I mean, I think that, you know, that's what we're, that's what I'm struggling with. I'll put my cards on the table. I think the test has to be that the trustee has to take some form of directed action with a specific intent to accomplish something. The trustee went into that hearing to gather information. The trustee didn't go into the hearing with an intent to scare the sister and get a reconveyance. Well, she might have done both. I think it's stretching perjury. I mean, personally, I don't think the trustee ever imagined that the getter was going to, on his own, ultimately, after hiring new counsel, get his, his sister to reconvey the deed. The trustee probably had in the back of her mind that she was going to have to force the issue. And so what the appellant is really relying on is a kind of approximate cause theory, as though this was a personal injury case, approximate causation, excuse me. I mean, yes, the hearing did set in course a series of dominoes that fall one on the that ultimately resulted in the reconveyance. But that's not intentional action of some nature. The cases, every single case cited by the appellant, even those cases where the debtor's exemption was overruled by the appellate court, there was some form of intentional action by the trustee. There's a couple of cases, In re Cuno, In re Hicks, and I think there's even a third one that involved automobiles, where there was an unperfected lien that, where the trustee didn't bring a lien avoidance motion. All the trustee had to do was call up the auto lender and say, hey, you've got an unperfected lien. What you're trying to help us find is the floor for the trustee's activity, such that a later action by the debtor doesn't just supersede that. Is that fair? I think so. Okay. So, and your view that the floor is some kind of action that's more than what happened here, that's directly related to the recovery, even if it doesn't by itself accomplish the recovery? I'm saying the trustee can't accidentally precipitate a voluntary recovery of the property and then turn, a voluntary return of the property and then turn around and say, well, I did it. This was my action that did it. There has to be something intentional. The appellant, especially in his reply brief, reduces the argument to the term accomplished. Did the trustee accomplish something? Well, if you look at the dictionary definitions of accomplish, it's something like this. To bring to an issue of full success, to effect, to perform, to execute fully, or if you go to Google, it says to achieve or complete successfully, with the example, the claims accomplished their mission. But the trustee didn't enter that hearing with a mission to scare the debtor into returning the property. I don't think she ever imagined that. Even if she did, I mean, it's not as if she could walk in there and give him a scary look and have I mean, that wouldn't be recovery, right? I mean, you're saying she's got to do something. Right. She has to do something. I guess I'm leery of the idea of an intentional test, because I think it's got to be the trustee's intention to get all relevant information about the case of the 341, including whether there's an asset with value in it to administer and whether there's a potentially avoidable transfer. That's the trustee's intention. It should be in every case. It's a ministerial function that trustees are obliged to fulfill. I don't think that would, I don't think that means... I'm not so sure about that. I mean, you know, suppose the trustee had asked, did your sister really led you to this money? Or did you create this deed of trust to keep this property from being sold in bankruptcy? Let's suppose the trustee asked a question like that. I think she did. I think she did, actually. I think a question of that nature was addressed to the debtor. She asked, when did you get the money? And have you paid any of it back? And I mean, you know, she was circling around it. Yeah. Yeah. Well, and just to digress a little bit. Let me ask you again. I'm perhaps overly focused on this continuum that I see in my head in this interview. What would she have to do, in your view? She's gotten the information. At what point would you say she recovered it? If she writes a demand letter, should she recover it? We would have a much weaker case if she had sent a demand letter. But not only did she not send a demand letter, but we contacted her office saying, look, we recognize the mistake and we're in the process of taking steps to correct it ourselves. And that's an important consideration from a public policy point of view, isn't it? If we're setting this continuum, one of my concerns in setting it, and this is something that Mr. Chung will have to deal with when he gets back up, is from a public policy perspective, don't we want debtors to fix things? I mean, in this case, because it was an exemption issue, maybe the fix wasn't great from the perspective of the estate. But I do have some concerns about sort of the hair triggering of this that's going to cause debtors to just say, well, she asked me a question about it. I can't voluntarily give it up. It's going to be recovered for the estate. Why should I bother? I think there's a whole other dimension, Your Honor, to the public policy side of this, which is those cases such as Hicks and Prunell, where the debtors' exemption was denied. There was a strong public policy reason for that as well, which is that to allow the debtors their exemptions would have been to provide them with a windfall that they would not otherwise have been able to obtain. Because those unperfected liens would have been enforceable against the debtors outside of bankruptcy. So you had debtors trying to take advantage of the bankruptcy system to grab back from the trustee something the trustee had recovered. In this case, there is no windfall to this debtor. He recorded a California homestead back in 2011, I believe, August of 2011. We actually had a voluntary homestead here. A recorded homestead, which for inexplicable reasons his legal handlers failed to assert. All he's getting is what he was entitled to from day one. He's not getting a windfall. And moreover, the creditors are not being deprived of anything. Let me just finish this one thought. Should he be allowed his $175,000 exemption if it turns out that because of the explosion in the real estate market that there is equity over and above that exemption and over above, there's I think a judgment lien or two on the property, then the creditors are going to get it, which is all they would have got from day one if the case had been prepared correctly. So the public policy affecting some of the decisions in the cited cases had to do with debtors getting a windfall. My debtor is not getting any windfall. He's only getting what he reasonably should have expected from the bankruptcy system from the beginning had his case been prepared correctly. And if the trustee finds out after the allowance of the exemption that there's equity and over and above that, she can perform her functions as a trustee. Anything further? I'm fine, thank you. Mr. Pan, you've got three minutes. I'm not cutting you off. I'm just flailing around among my notes. I'm sure there's more than I should be saying. Well, why don't we just touch briefly on glass because Mr. Chung is again reverted to glass for the proposition that the trustee doesn't have to bring a legal proceeding and so on. Let me just remind the court that in the glass, the trustee, which was a concealment case, the debtor concealed the property. When the trustee learned at the 341A from a creditor that there was this transfer out of the bankruptcy state prior to filing the case, the trustee in approximately 35 days brought an objection to the debtor's claim of exemption. And then in that objection to exemption in the glass court really emphasizes there was a threat of legal action. So, right there in the trustee's objection, there was a threat of legal action. You don't have that element in this case at all. And the trustee brought that objection to claim within 35 days of 341A. In this case, I think it's, if my memory serves me, it's three and a half months later that the trustee objected to the debtor's claim of exemption. The debtors, we filed a claim of exemption for $175,000 as soon as the debtor retained it. And the trustee didn't object to that until three and a half months later. I don't think there's anything in this case that evokes any of the concerns of glass and to rule against this debtor would be dramatically extending the reach of glass and narrowing any, virtually any opportunity of the debtor to correct the errors that were made in a situation where the creditors are not prejudiced and the debtor does not get a windfall. Let me ask you one last question. What, if anything, should we take from the court's declination to allow the case to be converted? That's a tough question, a very tough question, which concerns me to this day. And I'll give you my candid answer. Sure. What happens is at first blush, this judge didn't like my debtor. That's the essence of it. I have to be, to be completely candid, I had the impression at the time that the judge really hadn't looked at all the declarations that we submitted. She just, she was overwhelmed by the idea that the debtor had not disclosed in the Statement of Financial Affairs the transfer. She didn't give sufficient weight to the necessity of the disclosure in Schedule D. And she didn't like the debtor. She thought he was playing games with the system. And there was quite a bit of litigation. I was astounded that she denied the motion to convert. But there was a considerable amount of paperwork filed subsequent to that. And I think eventually the judge really thoroughly looked at all the declarations we had filed and realized this guy was a victim. He wasn't a bad guy. He wasn't trying to game the system. So her opinion changed. So she might have at one point had some marama concerns, but those were, those were changed. Yeah. Okay. Yep. All right. Thank you very much. We'll go back to Mr. Chung. Thank you, Your Honor. And just allow me to address the court's concern. What can the debtor do? I understand the court's concern from a policy perspective that we want debtors to correct things as soon as possible. Every single debtor has that opportunity. We are not contesting that we should encourage debtor to make, to make correction as soon as possible. And here the debtor was afforded that opportunity at every single 341A initial meeting of creditor. The question that the trustees is required to ask by the U.S. trustee is, did you, have you read your petition? Was everything, is it, are everything in your petition's schedule and statement of financial affair accurate? Are there any errors? Is there any changes or omissions that you want to bring to my attention? The debtor had that opportunity. Every debtor has that opportunity, Your Honor. But what would he have said that would have obviated the position, or would have made the trustee not take the position? I mean, what, what, what was he supposed to say? I'm not sure I, I get your point, and it's an excellent one, but I can't apply it to these facts cleanly. So tell me, take me back to the 341A, and she's asking these questions, and she's asked that general question, is anything inaccurate? He's, he's shown that the trustee, he hasn't shown the transfer, so if, if he'd said, well, that I, my statement of financial affairs didn't have this transfer, at that point, would, we have a different set of facts here? Would you be taking a different position here, better way to put it? Probably, Your Honor, and I would acknowledge that had the debtor disclosed everything, but in particular, the transfer, the debtor would have the more viable case, but that's not the case here. And Your Honor, by listing the deed of trust on Schedule D, Your Honor, and not disclosing it on the statement of financial affair, not only failed to disclose the transfer, but also gave the trustee the illusion that there was no equity, when in fact, there was equity to, to, to administer. And I'll be happy to answer any additional questions. I have two to follow from that, if that's okay. I mean, one is, I think there is theoretically a difference between not listing an asset, in which case you can't ask anything at all, and listing one with arguably a lien that's not so, you know, real, which you can't figure out. And the second one, the other thing that strikes me about this, the debtor's reaction, when somehow the lights went on was, I got bad advice, I better get, and he leapt into action and got another lawyer who just went a totally different direction. I mean, that that says something to me about the debtors, you know, what the debtor might not have understood before about what was wrong with this. And his first instinct was to make sure that he went a different direction by literally getting different advice. And I mean, I guess the question is, you know, what kind of a world do we want? Do we want one in which a debtor is more encouraged to do that? Or one where he or she is more encouraged to have a fight with the trustee, which I think was Judge Taylor's question. We obviously want debtor to be honest and forthcoming, your honor. But let's remember, the debtor only came forward because he got caught. And I think it's important to point out why the deal of trust was created. And I'm reading specifically from the Bankruptcy Court's finding. And I quote here, the debtor engaged in pre-petition transfer to shield the property from creditor. Specifically, the debtor propagated a deal of trust in favor of his sister to prevent liquidation by a Chapter 7 trustee. The debtor has done so with intent, your honor. This is not the honest but unfortunate debtor that the Bankruptcy Court is designed to protect. What place in this? Okay, look, I think we would all agree that the people who were given advice were, to use a technical legal term, bad people. So he's getting bad advice from bad people. But he had a recorded homestead. He was, the trustee was, at the end of the day, did the recordation of that trustee make one hillbilly's difference in what the trustee would have been able to get from this property? I don't know the answer to that question, your honor. I think it's no. I'm just telling you. I think the answer is no. Because the recorded trustee, you know, California has this weird two-tier system. But the main difference is even if he sold the property himself, I think he would get the equity above a nonconsensual lien. So the only way she got any, you know, the only way she's ever going to get it is through this stupid transfer. I don't think it, I'm not sure it provided an advantage at all for him. I don't know what that means. I just hadn't focused on the fact that there was a recorded homestead. So do you disagree that there's a recorded homestead that predates this trustee? I do not disagree, your honor. And your honor is correct. With the recorded homestead, we would need to really avoid this transfer in order to liquid, in order to administer the real property. Okay. Okay. It's just a bizarre set of facts. Thank you, your honor. I see that I have 20 seconds left. I'll be happy to take any additional questions. All right. Judge Ferris or Judge Lafferty, any additional questions? Further. Thank you. Thank you. This was an excellent argument. Yes, we've got a lot to think about and we will do so. Thank you very much. I appreciate the panel's time this afternoon. All right. Thank you.
judges: Taylor, Faris, Laferty